All rise. The United States Court of Appeals for the Federal Circuit is now opened and in session. God save the United States and this Honorable Court. Thank you. Be seated. Okay. The first argued case this morning is number 15-16-66. The continuous juror against the United States, Mr. Silberman. Good morning. May it please the court. This case comes to this court in an unusual situation. It's kind of like coming to the Supreme Court in the sense that we have two different decisions from the Court of International Trade on the identical merchandise. The first time, the Court of International Trade followed this court's decision in store wall and they classified these pieces, top tracks and hanging standards, as parts of furniture under heading 9403. The second time, the court found that because the container store products were metal and the store wall products were plastic, that the court didn't have to follow store wall, which we think was definitely wrong. Is that the only distinction between TCS1 and this case? Didn't they say that they don't have to follow their decision in that case to follow store wall? Well, the judge in TCS2 said he doesn't have to follow TCS1, but TCS1 was following store wall, so we think the judge should have followed store wall. The distinctions between TCS2 and TCS1 are really small. One of them is- They're willing to forego any argument that somehow we should have been bound by TCS1 and just focus us on store wall. I think we have to go right to store wall, Judge. I think two judges at the same level can come up with different conclusions. There is precedent, which says very plainly that as far as customs classification and duty assessment is concerned, explicitly stare decisis just doesn't apply. Do you agree with that appreciation of precedent? As plainly said, is there a way of confining it or limiting it otherwise, or is it a fresh shot every time there's a new importation? My understanding is it goes back to the Stone and Downer case, which related to collateral estoppel, not stare decisis. So I don't think- But the result would be the same, would it not? If it's a stop, then it's a stop? No. I think what happens- I think there's a slight difference. If you have collateral estoppel going your way, then you have issue preclusion. There's nothing even to talk about. But if you have stare decisis, what we left with from Stonewall is how the court interpreted the law. The facts relating to store wall are not our facts. I have a slightly different product. But in store wall, the court determined what the scope was of heading 9403 and what the notes were for chapter 94. And it's amazing the parallels between our products and the store wall products. The court said in TCS 2 that the products in our case are functional equivalents of the products in store wall. Well, that makes sense. Also, the end product, the unit furniture product, is a functional equivalent of the products in store wall. In addition to that, what we have is the government made the same arguments in store wall that they're making here and the same notes. One of the things I was a little confused about in your brief is no matter what we think of the merits of it, it seems like you were really focusing a lot on Judge Dyke's concurrence. But that's not the majority. You are correct, Your Honor. We focused on Judge Dyke's concurrence just for one point. That 9403 was a use provision. But the majority didn't say that. No, they did not. They didn't really say it wasn't, but they didn't say it was. Correct. They didn't have to get to that. But they did make a decision based on GRI 1. If they make a decision based on GRI 1, that means there's only one tariff provision that applied to that merchandise. So here, merchandise started at chapter 39. There's a note in chapter 39 that says, if you have articles of chapter 94, you move them to chapter 94. Then there's a note in chapter 94 that said, if you have an article that is a part of general use as defined in section 15, that's a metal section, that you are to remove parts from chapter 94 and put them back into parts of general use. So that note, which was very much in play in Storwell, says, not only do you move parts, the metal parts that are parts of general use, but you also remove similar plastic parts. So our thinking was, if the parts in Storwell were parts of general use, then the court would have excluded it from chapter 94. And then you would have had competing notes. One note moving it from 39 to 94, and one note moving it out of 94, because it would be like a part of general use. And the court didn't do that. They said, oh, we're only dealing with 94. And these arguments were made by the government. They're in their briefs. And the court never addressed it in its opinion, but it was before the court. So let's put stereodecisis aside for a second. We think we're entitled to judgment just based on that. But there should be some kind of parallel between the products in Storwell and the products here. The fact that one's metal and one's plastic shouldn't make a difference. So you think that even without viewing it as a use provision, that 9403 is still more specific than 8302? OK. So let me answer your question this way. That only comes into play if this court believes that this merchandise is covered by section 15. We don't think it even is covered by section 15. We don't think it is a part of general use. But even if it is, it's not an increase. If it is a part of general use and it's parts of furniture, the government concedes it's parts of furniture. The court believes it's parts of furniture. Then I have notes that cancel each other out. You have to go to relative specificity, GRI 3. And based on Judge Dyke's decision, a use provision will defeat an eonominy provision. But can 9403 defeat the eonominy provision even if it's not a use provision? That's really my question. I think it's more specific, but it's a closer question, Judge. But we don't think that our merchandise is considered a part of general use. Let's go back to section 15. In section 15, which covers 8302 and a bunch of other provisions, section 15, there's a lot of articles of chapter 94. You move them out of section 15. And again, we go back to chapter 94 that said if you have parts of general use, you go out of chapter 94. The government classified this, was arguing it should be classified under 8302 for metal mountings suitable for furniture. And now the exercise is, what's a metal mounting suitable for furniture? So there are a number of different, we look at common meaning, we look at legislative history, we look at explanatory. Well, we don't even get to legislative history unless it's ambiguous, right? That's correct. So did you argue below that those terms are ambiguous? Absolutely. What happened is, the dictionary definitions of the term mounting are really all over the lot. So here's a collection of them. One of them says frame, support, embellishment, it's base, setting. It could be lots of different things. And what the court did was, they picked one definition. And as it turns out, it's a Merriam-Webster definition. It says mounting defined for kids. That's the one the judge focused on. And he says it's a frame or support that holds something. Then it also says a mounting for an engine, which would kind of put it into context. The judge didn't add that into his decision. But the dictionary definitions for mounting are very, very broad. It can either be something that attaches to things. It could be something that's attached to something. But it's not the thing itself. Here, the top tracks and hanging standards form the back of this furniture. So your point is that by objecting to the vagueness of the dictionary definitions, that you were effectively arguing ambiguity. Yes, we pointed the judge to the explanatory notes from the very, very beginning. OK, did you point the judge to legislative history, or is that new for us? I think the legislative history is new. What we found was, when we look back, we found that, well, first we saw that in Storwall, the court looked to the explanatory notes and looked to legislative history, which in that case turned out to be the Brussels nomenclature. And we have the exact language from the Brussels nomenclature that appears in the explanatory notes for the harmonized tariff schedule. So we thought that was a helpful tool. If it worked in Storwall, it should work here. So if you have dictionary definitions that go in lots of different directions, the court has to go beyond just those common meaning definitions and look at explanatory notes and legislative history and so on. And the explanatory notes here, the judge cites them in his decision in different places. But our sense is that he really ignored them. He took one sentence and used it, which basically said, if you have something that's used for a specific use, it still can go here. But most of the explanatory notes limit what's a mounting suitable for furniture, to an embellishment type thing, to an accessory type thing. It says in there clearly, it doesn't include essential part of the structure of an article. Well, without our top tracks and hanging standards, there is no unit furniture. You can't get any more essential to the structure than those articles. It also gives you examples of things that are those structural pieces. It gives you the swivel in one of those chairs to turn around. And it gives you window frames. And ours are just like that. Without the swivel in a swivel chair, you have no chair. Without the top tracks and hanging standards, you have no unit furniture. Is it correct that what you've been telling us accords with the initial, the very first, customs classification? Yes, Your Honor. On the first decision. Yeah. Oh, yes. This was argued in Container Store 1 and in Container Store 2. OK. And it's kind of interesting that there were some rulings issued by the Customs Service. Oh, not whether it was argued, what was decided. At what stage in the history, at least as you argued it to us, the position you're now taking had a previous decision on the premises that you've now argued? Yes. Even the Customs Service found that the provision for mounting suitable for furniture was limited to non-structural type items. And they've come away from that, obviously, in this litigation. But that was their position at the administrative agency. That was my question. Let's hear from the government, because I'm going to ask counsel the same question. Thank you, Your Honor. Thank you. Ms. Powell. Yes. And as you see, what's troubling me is at what stage can an importer feel that there is a classification that has been assessed and the duties paid and so on, and in this case, reviewed, that can be relied on rather than having to start afresh with another importation? Well, Your Honor, to answer that question, as counsel had referred to, there is the principle of stone and downer. And so to the extent that there hasn't been a ruling on a classification by this court, an importer can relitigate their merchandise, and so can the government. But you're not saying Customs can keep changing its mind until a court intervenes? Well, absolutely not. Let me go back and explain what happened in Container Store 1. Container Store 1 was briefed at the same time as Storewall at the CIT. But our case sort of sat while Storewall went forward. In Container Store 1, the issue of unit furniture was never brought up. In the Container Store 1, they argued that the merchandise was shelved furniture. Neither party put forth any arguments on unit furniture. We know what they argued, but the items were the same, I gather. Yes. But once Storewall, this court decided Storewall, it decided a definition for unit furniture, which then caused us to reassess our arguments in light of Storewall. And any new arguments we wanted to put forth, we had to go back to the trial court and do that, because this court would have never heard them before. So that's why there's a Container Store 2. But the reality is it does feel like you've got Container Store 1 where the government loses. You've got Storewall where the government loses. And it does feel like you just keep going back to the well because you're not happy with the conclusions of various courts that are ruling against you. Well, let me actually explain why we're here in Container Store 2. It's not because we're unhappy. It's because Storewall changed the landscape. It set forth the definition of unit furniture. So we had to assess, if an entire LFOC system came in, would it fall under unit furniture? And that's why we're going back in this case. And in the Container Store 1 case, there was an error. We didn't appeal it, again, because of Storewall. And we would have had to put forth new arguments. The error that was in Container Store 1 was that the judge there stopped at Container Store 1. By the time she didn't do a proper parts analysis, Container Store 1 just said the merchandise is similar to Storewall because of the definition of unit furniture. The definition of unit furniture is stare decisis. But there's a second part to the analysis. There's a parts analysis. The parts analysis that the court undertook in Container Store 1 was simply the parts are dedicated to the LFOC system. That was the end of the parts analysis. So that can be changed with each successive importation? I'm not sure it can be changed. But the analysis that she undertook was incorrect. Why shouldn't the first one apply, and that would end it? The first Container Store? Should it apply? The first classification. No, because Stone and Downer, you can litigate again. And we're not just litigating again. Like I said, Storewall changed it. So the second part of the analysis actually. But wait, TCS 1 was decided after Storewall. Yes, exactly. And the court never gave us an opportunity to present any new arguments in light of Storewall, despite the fact that she sent us a letter asking us about Storewall. And the government, in that letter back to her, said we should wait. And yes, and we think we might have some arguments about, you know, regarding Storewall. But instead of asking the parties for more briefing, she just decided the case. Well, what's the difference? I mean, can you distinguish the function of the materials that issue in Storewall and those that issue here? Absolutely. The materials in Storewall are called slat walls. And those slat walls are huge panels that you put on the wall. Sort of like building material. Like when you go into a store, you'll see slat wall. And within the slat wall, there's these grooves. And you put the hooks in the grooves, and then you can put your baskets or your shelves. It has an aesthetic look to it. It comes in many colors. It's mildew-resistant. It's waterproof. So the actual panel is the thing that makes Storewall. Here, the top tracks and hanging standards are hardware. When you go into the container store, you don't go in and ask for top tracks and hanging standards. Your goal is to create a closet. How many drawers do you need? How many baskets do you need? They work exactly the same way. At the end of the day, high level, they're organizational systems. But the merchandise in Storewall, the merchandise in the container store is just hardware. The standards are no different than standards. It's just hardware because it's metal as opposed to plastic? No. Or not mold-resistant? I'm not sure I understand the distinction. It's different because it's hardware. The standards, they might be specific to Alpha, but they're no different. They don't operate any different than when you go into Home Depot and buy a standard, just because the Alpha doesn't take them out of being hardware. They're the things that you need to affix your shelves to the wall. And the distinction here is not just simply that one's plastic is one metal. One's metal, and that metal is what brings in Note 1D. Right, so your description of the differences would seem to be putting you into use land. In other words, putting you into the question of, is it a use provision? And then you buck upright against Judge Dyke's concurrence. No, Your Honor, I understand what you're saying. If you actually, right, classification is based on the headings, the chapter notes, and the section notes. Here, we have the headings, 9403, 8302, right? Then we go to the notes. That's the part where the container store, one, didn't, in our opinion, wasn't correct. The note is 1D. 1D takes you out of 94, and you have to do an analysis of Note 1D because the merchandise is metal. That's what's different. It's not that they're simply metal. Being metal implicates Note 1D. And Note 1D says, if it's a part of general use, it comes out of 94. So essentially, we don't classify merchandise as to whether it's similar or not. We classify it based on the headings. So based on the headings and the notes. And the note takes you to 1D. And 1D takes you to 8302, and whether the merchandise is classifiable in 8302. And that takes you to what the language of 8302 is. And to back that up, there's an additional rule of interpretation, Note 1C. Note 1C governs parts as well. And that backs up what I was saying, is that additional rule of interpretation, Note 1C, says if you have a specific provision for parts, it doesn't go in a generic provision. So there's a parts analysis that wasn't undertaken in Container Store 1. And it wasn't at issue in Store 1 because Note 1D wasn't implicated. 1D is a use rule, right? A general use rule? Note 1D? Yeah. Note 1D says if you have a merchandise that falls under the term parts of general use, it comes out of 94. And to determine what parts of general use are, you have to look at the definition of parts of general use. And that's in Note 2 to Section 15. And Note 2 to Section 15 lists a bunch of headings that are considered parts of general use, and 8302 is there. So it's not the fact that it's just metal versus plastic, or are they the same? You have to go with, how do we classify merchandise? Step one, we look at the headings. Step two, we look at the notes. The note is 1D. Does it fall within Note 1D? Well, Note 1D takes you to Note 2C, parts of general use, 8302, that takes you to the heading. Do they fall within the heading? Yes. As the trial court correctly determined, these products are mountings suitable for furniture because they support the shelving, they support the baskets, and together with brackets, they support the other items. You see a distinction between accessory mountings and fittings versus mountings and fittings? Well, Your Honor, the accessory mountings and fittings language is in the explanatory note. So when we're looking at the explanatory note, we definitely don't want to import things from the note into the heading. So we're only supposed to look at it for the things that help you? No, I'm just saying, because the container store wants to read a limitation into the heading taken from the note. Back to the word accessory, accessory fittings and mountings, that note generally says things like handles, clasps, hinges fall within that, and brackets, standards, top tracks, they're all, I don't know if we want to say accessory, but they don't make the product. That's how you affix them to the wall. It's no different as when I go into Home Depot and I want to buy shelving, I buy a standard and something to affix to the wall. It's no different because it's called Alpha, and that's what the note says, 8302, and this courts Honda decision. A part of general use can be specialized. It can be a bolt for a Honda car and still go in 8302. But Honda, wasn't it restricted to those statutory provisions that were under review? I mean, why would Honda apply here? Oh, Honda applies because it shows the print, and as they say in the decision, the notes work out how you actually arrive at the classification. So it's helpful to follow the analysis. The analysis starts with the exclusionary notes, and then it goes on to say, essentially at the end of the day, if you're a bolt, and even if you're specifically for a Honda, you come out of that provision and you go into the parts of general use provision. So what you do is you read Honda extraordinarily broadly, and yet you read StoreWall, which is much more factually consistent with these circumstances very narrowly. But I think what you just said is key, factually. StoreWall, stare decisis is really limited to the actual legal holding. The legal holding in StoreWall was just the unit furniture. That's the legal holding. That's the stare decisis. And we don't have a whole system of unit furniture here. The part of the, then there was a second part of the decision that it was actually said, classification of the StoreWall merchandise. That's where actually applied the law to the facts. But it also actually deals with at least one of the two provisions at issue here where Honda doesn't deal with any of the provisions. True, I agree. But Honda does deal with the concept of parts of general use. Parts of general use appears throughout the TAF. And that was just one instance to show that how they work together for different provisions. And again, I'll direct the court's attention to the parts analysis in StoreWall. All the court held was that the parts in that case are dedicated for use with the StoreWall system. Therefore, they're parts of the StoreWall system. Here, you have to deal with Note 1D. It's a legal note. It's a statute. And that wasn't at issue in StoreWall. The other thing I wanted to address was the legislative history. The legislative history in StoreWall was a bit different. It talked about the Brussels nomenclature. But there was also a committee report. And the committee report actually gave the court some context, some background as to the definition of unit furniture. So you agree that legislative history is one of the things we should be looking to? No. Regardless of how we read it? No. Here, there's no legislative history. All they point to is the fact that the Brussels TAF nomenclature is somehow the same. That doesn't shed light on anything. There's no committee report. There's nothing. And in this court's decision in Tyco Fire Products, the court held that the Brussels TAF nomenclature is irrelevant to the HTSU. But we didn't say it was irrelevant in StoreWall, did we? No. We actually looked at it. But you had legislative history to look at. You had a committee report. There's no committee report here to shed light on the scope of 8302. And another thing, it's the explanatory note that they're relying on. Explanatory notes aren't legislative history. So even if you look at the Brussels nomenclature explanatory note, the fact that it's the same here, that doesn't say anything. There's no committee report. There's nothing. There's no information. So I wouldn't even term it legislative history. So I do disagree. And in terms of whether it should be considered, no. Because here, the tariff term mounting is not ambiguous. It's actually base metal mountings and fittings suitable for furniture. So it doesn't encompass every single mounting. It specifically says what kind of mountings they are. Well, to round out what I asked you at the beginning, the government's position then is that when there is a change in classification, there is no obligation to point to error or clear error, no deference to the prior classification at all. It just starts afresh and is presented here on appeal on the merits when it's appealed of the current classification to which the importer is objecting. Your Honor, yes. As long as this court has not issued a binding pronouncement in a case, there's no stare decisis. You say this court, or how about the Court of International Trade? There's no binding stare decisis among the judges there. I think if they want to give each other their decisions persuasive way, they can. But it's not binding. I'd like to point this court to the decisions in Decker's. We've had Decker's I. We've had Decker's II. And there might be a Decker's III. It's the same thing. In that case, the importer keeps bringing the cases over and over again. But in Decker's II, this court said, we held in Decker's I what the statute was, how to construe that statute. Therefore, you're stuck with that part of it. You can litigate and litigate and litigate, but that part of the decision you're stuck with. And so we had Decker's II, and we probably will have Decker's III. So until this court makes a pronouncement, that's the state, whether it's plaintiffs, whether it's the government. And we don't do it lightly. We don't do this lightly. It was because of the strange circumstance that we had here with Storwell coming down and us not having a chance to brief the court. We could not appeal. Because it would seem like a brand new case if we brought it on appeal, because there were so many issues, new arguments, that the court wouldn't have seen below. OK. Any questions from the staff? Any more questions? Thank you. Thank you. A few points. Mr. Silverman? Yes, Your Honor. Oh, thank you. I think Decker supports our position, because I think Storwell determined the scope of 9403, and the notes to Chapter 94. And I think that squarely resolves this case. So counsel for the government talked about Chapter Note 1D. It says, this chapter does not cover parts of general use as defined in Note 2 to Section 15 of base metal, or similar articles of plastic, Chapter 39, or safes. I mean, that note was in play in Storwell, and it was decided there. And I think it's binding here, or we need some consistency. After Storwell was decided, my recollection is, and I don't think this is critical either way, but my recollection is, the judge asked us for additional briefing on it, on our case, which was pending, suspended. And I think we gave him information on it. This is Container Store 1. Also, all the notes that we're talking about today, the cross notes. The government's contention that they were never given a chance to? That's what the government was saying. They never briefed. And you're saying that's not your recollection? My recollection is, we did brief it, and then the judge issued the decision. In addition to that, these notes, which move things from one chapter to another, and vice versa, those were all before the court in Container Store 1. The Container Store 1 judge did not address the issue about whether or not these articles were specifically within the common meaning of 8302. And the courts don't have to address every argument that's before them. But that argument was before them. The Storwell merchandise. The government talked about these big panels, but there were also locator tabs. And this court also said, both of those things go into Chapter 9403. The CIT in Container Store 2 has said they are functionally equivalent to our articles. I don't think that's worth anything. Do you think that the fact that in Storwell they were bigger, and mold proof, and more dramatic, that those make a difference? No, I don't. Because one thing I agree with my opponent about is, it's a process. You have to identify the tariff headings, and then you look at the notes. And you see, are you prima facie classified under both heading, or one heading? And doing that, you're looking at common meaning, you're looking at explanatory notes. But do you walk into Container Store and buy a system? Or do you walk into Container Store and just put pieces and parts together? What you do is, I think you sit down with a sales representative, and they tend to sell you systems. So there's a half a dozen different packages. You can buy individual items, but usually, I want the boys' closet, or the boys' room, and they give you 30 pieces, or whatever. That makes it up. You take it home and put it together. That's generally how it's sold. The evidence in our case is, it's like 97% of these top tracks and hanging stands are sold with other items in the system at that time. Shelves, and so on. I don't think this is a use case anymore, because the government has conceded that 9403 covers these articles. Once we're there, it's really not a use case at all. There's no doubt about the use of these items. The most important thing we do in this exercise, as in to say, because you're sitting here a long time, and you know your job is to try to implement the intent of the drafters of the statute. And I think it's not right to say, toss out the explanatory notes, and toss out the Brussels. We're not just dealing with the provision of Brussels, but also the notes to the Brussels nomenclature. The only reason they don't consider the explanatory notes to be legislative history for the Harmonized Tariff Schedules is because they were published at the same time as the Harmonized Tariff Schedules. But they clearly show the intent of the drafters of the statute. And the fact that this is going back over 50 years, 60 years, means they don't want to put functional items in 8302. The other thing I will mention is this note that talks about parts of general use. But all it is, is just a list. It says, where the words parts of general use appear in the tariff, it means items classified under these provisions, A through J. And one of them is 8302. We're not in 8302. We're not a part of general use. We're not excluded from Chapter 94. I mean, that's how I get to where we want to be. And I think that's all I have, unless you have any more questions. One more to ask us. Good. Thank you. Thank you very much. The case is taken under submission.